# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 18, 2008

### STATE OF TENNESSEE v. MICHAEL TODD KIRKUP

**Direct Appeal from the Criminal Court for Davidson County**
No. 2006-D-3083    Cheryl Blackburn, Judge

_____

### No. M2007-02066-CCA-R3-CD - Filed July 16, 2008

_____

A Davidson County jury convicted the Defendant, Michael Todd Kirkup, of one count of theft of property over $1000, one count of possession of drug paraphernalia, and one count of second offense driving on a revoked license. The trial court sentenced the Defendant to an effective sentence of six years in prison. On appeal, the Defendant contends that: (1) the trial court erred when it allowed the State to impeach his credibility with his prior convictions for theft and fraudulent use of a credit card; (2) there is insufficient evidence to support his convictions; and (3) the trial court erred when it enhanced his sentence. Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Emma Rae Tennent (on appeal) and J. Michael Engle (at trial), Nashville, Tennessee, for the Appellant, Michael Todd Kirkup.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Deshea Dulany, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Bret Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts
### A. Trial

This case arises from the Defendant's arrest for driving a van that had been reported stolen on September 12, 2006. At the Defendant's trial, the following evidence was presented: Stephan Szilagyi, an employee of Rent-A-Center in Springfield, Tennessee, testified that one of

Rent-A-Center's business vans was stolen on September 12, 2006, during business hours. Prior to being stolen, the van was parked by the loading docks in the back of the store with the keys still in it. The driver of the van left the keys because she went into the store for ten minutes and planned to immediately return to the van. At around 2:00 or 2:30 p.m. store employees reported the van missing.

Szilagyi reported the van stolen to the Springfield Police Department, and the police department informed him when officers found the van. Szilagyi stated that, when the van was recovered, a toolbox and a Comcast radio were missing from inside the van. Szilagyi testified he did not know or recognize the Defendant, and he did not give the Defendant permission to take the van.

Allen Canler, the store manager for Rent-A-Center, testified he was familiar with the company van stolen on September 12, 2006. The van was a plain white 2001 Chevy Econovan. He estimated the value of the van at $6000. Canler said that he did not know the Defendant, and he did not give the Defendant permission to drive the van.

Officer Brian Myatt of the Metropolitan Nashville Police Department testified that, at about 1:00 a.m. on September 13, 2006, he was patrolling an area of Nashville that had numerous cars broken into on previous nights. He saw a white van in the area where the break-ins occurred, and he attempted to follow the van and run the license plate number through his computer. As he began following the van, another officer, Officer Jason Moyer, initiated a traffic stop of the van based upon the van's inoperable brake light. Officer Myatt pulled in behind Officer Moyer and determined the van had been reported stolen in Springfield. The officers arrested the Defendant and searched the van. Officer Myatt located a silver metal "crack pipe" in the center console of the van.

On cross-examination, Officer Myatt testified Officer Moyer arrested the Defendant immediately after Officer Myatt learned the van had been reported stolen. The officer agreed the Defendant had the keys to the van. On redirect examination, Officer Myatt testified that the Defendant was alone in the van.

The State offered a certified conviction proving that the Defendant's driver's license was revoked at the time of his arrest on September 13, 2006.

The trial court heard arguments from counsel about the admissibility of the Defendant's prior convictions should the Defendant choose to testify. It ruled that the two prior theft convictions, while similar to this case, were admissible "because of . . . the absolute importance of the assessment of credibility, should [the Defendant] testify." The trial court also ruled that the State would be allowed to cross-examine the Defendant about his prior fraudulent use of a credit card conviction because it was a crime involving dishonesty.

The Defendant testified that, on September 13, 2006, he was with some other people at a motel, the Congress Inn, drinking and partying. He "was elected" to make a run to the store for everyone. The Defendant drove a white van, which he thought belonged to David Wooten,

because his car was not at the motel. The Defendant described Wooten as a "[c]asual acquaintance." The Defendant testified the keys were in the van, and Wooten gave him permission to drive the van. The Defendant said that, when he was stopped by police, he told both officers how he came into possession of the van and offered to take them to Wooten. The Defendant denied owning the metal pipe, which the officers described as a crack pipe, found in the van. He said the pipe also belonged to Wooten, who had placed it in the center console.

The Defendant agreed he had previously been convicted twice of theft of property and once of fraudulent use of a credit card.[1] He explained that two of these convictions occurred more than ten years ago. Further, the Defendant testified that he was employed as a flooring subcontractor and was also a member of the 278th regimental combat team for the Army National Guard at the time of his arrest .

On cross-examination, the Defendant agreed he was convicted of theft of over $1000 and fraudulent use of a credit card in 1996. He was also convicted of theft of over $1000 in 2000. The Defendant said he grew up in Springfield, Tennessee, and he knew the location of the Rent-A-Center from which the van was stolen. He said that, at the time of this theft, he lived in White House, Tennessee, with his father, but he had not been there for a couple of days before this incident. The Defendant agreed he did not have his car with him at the Congress Inn and said Wooten had picked him up from his father's house in White House. The first time the Defendant saw the van was at around 10:30 p.m. on the night before he was arrested. He said he rode in the van with Wooten prior to driving the van.

The Defendant admitted using crack cocaine at the motel and said he was a crack cocaine user at the time of this incident. He agreed he had seen Wooten use the crack pipe the officers found in the van. The Defendant indicated that he had no money with him at the time of his arrest. He said he told the officers he rented the van from Wooten for fifty dollars, which he maintained was true. The Defendant's plan was to go and buy alcohol, bring it back to the motel room, and then to leave again in the van. The Defendant said he intended to use the van to go to his house, change clothes, and see a woman in White House, Tennessee.

The Defendant said a cage separated the front of the van from the back of the van, and he did not look to see what was in the back of the van. The Defendant denied seeing the toolbox or the radio equipment in the van.

Based upon this evidence, the jury convicted the Defendant of theft of property over $1000, possession of drug paraphernalia, and second offense driving on a revoked license.

### B. Sentencing Hearing

---

[1]The trial court properly instructed the jury that it could only consider the Defendant's previous convictions as they related to his credibility.

At the sentencing hearing, the trial court admitted the presentence report, which showed the Defendant had three prior felony convictions. It also showed the Defendant had previously been convicted of driving on a revoked license and use of drug paraphernalia. The parties agreed the Defendant was a Range II offender, and the range of punishment for his class D felony theft conviction was four to eight years. Further, the parties agreed the maximum sentence for the two misdemeanor convictions was eleven months and twenty-nine days. The State also introduced additional judgment forms that reflected the Defendant had been convicted of violating his probation.

The Defendant testified he suffered from post-traumatic stress disorder ("PTSD") from being in combat in Iraq, and he also suffered from depression and bipolar disorder. He said the "Mental Health Co-Op" evaluated him and provided these diagnoses. The Defendant has not been medicated for these illnesses.

The Defendant detailed his military service, including that he joined the military in 1991. He left the military for a period of time and worked as a carpet installer until he returned to the military as a mechanized infantry soldier, or a "ground fighter." The Defendant said that he was deployed to Iraq once with the 278th Regimental Combat Team attached to the Third Infantry Division. The Defendant said his PTSD is a result of the things that he witnessed and in which he participated while in Iraq. The Defendant explained that, despite his prior record, he was allowed to go to Iraq because he had waivers signed allowing him to volunteer on the deployment. The Defendant said he was "in a very hot zone" and "attacked pretty much every time [h]e went out."

The Defendant agreed he had an alcohol and a crack cocaine problem and explained that the mental health professionals told him that he was "self-medicati[ng]." The drugs and alcohol helped the Defendant try to forget what he had witnessed. The Defendant said he did well while incarcerated, taking a computer vocational class. He offered a letter of support from the instructor of his class. The Defendant said he also graduated from New Avenues.[2] The Defendant expressed hopes to seek treatment for his substance abuse problems and to renew his treatment for his mental health issues when released. He said he is eligible to go to the VA for inpatient treatment, if the court were to so allow.

On cross-examination, the Defendant agreed that some of his felony convictions occurred for crimes he committed before going to Iraq. The Defendant said his PTSD began in 2004, and his convictions previous to that date were related to drugs and alcohol. The Defendant agreed he previously violated his probation and said his violations were for not reporting. He agreed he was on probation starting May 3, 2006, for misdemeanor theft, and he violated the probation by not reporting. He explained he did not report because he was using drugs and not thinking clearly. Further, he agreed he had not successfully completed his probation at the time that he committed the offenses in this case.

---

[2]There is no further description in the record of the New Avenues program.

The Defendant agreed that he was arrested in this case in September 2006. While released on bond, he was arrested for possessing unlawful drug paraphernalia and driving on a revoked license.

The Defendant's father, Robert Michael Kirkup, testified that the Defendant had served in the Sunni Triangle in Iraq and that he has mental-health and substance abuse problems. Kirkup said he found some intensive treatment programs that would benefit the Defendant. Kirkup said the Defendant had good skills and showed a lot of promise if he stopped using drugs.

The parties examined the Defendant's record and determined he had also previously violated a community corrections sentence. After hearing testimony and reviewing the documentation, the trial court found:

> This is a class D felony, most particularly the theft of property over $1,000. The other two are misdemeanors, though not necessarily required, the felony principles apply to those also. So I'm going to find first the enhanc[ement] and mitigating factors, set the sentence, and then we'll go[] [to] consecutive/concurrent, and then whether or not there's an alternative sentence.

> Okay. Enhanc[ement] factors, clearly factor number one. He has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, misdemeanors and things that have occurred before and after this crime. So that definitely applies.

> The next one that I find would be . . . factor number eight. And that is he has failed to comply with conditions of a sentence involving release into the community. That is clearly applicable to this case based on the documents that we've seen.

> And thirteen, that he was on probation at the time of this offense. It was from Sumner County. He had been on probation at that time for eleven months and twenty-nine days.

> All of those I find do apply. None others do really.

> Looking at th[e] mitigating factors, I actually am going to find two. One would be number one. And that is the conduct neither caused nor threatened serious bodily injury. That clearly would be made out by the proof.

> And then thirteen, any other factor consistent with the purposes of the chapter. And clearly his work in Iraq would be one of those where he volunteered. And that would be something to consider.

So given all of that I'm going to sentence him . . . on the theft property to six years as a Range 2 offender and eleven months and twenty-nine days as to both of the other offenses.

Now, the issue about whether concurrent or consecutive, the State is not even asking for consecutive sentences. Two grounds would apply if looking at them. And that is his criminal activity is extensive, his history is extensive, and the other one that might apply is that he was on probation at the time. However I agree with the State in that looking at the *Wilkerson* factors, clearly under the circumstances of this the aggregate term of consecutive would not reasonably relate to the severity of the offenses. So I'm not going to give him any consecutive sentencing. So it's six years, Range 2.

So that leads us to whether or not probation is appropriate or an alternative sentence. As General Gunn has pointed out on the records he has . . . previously been allowed to have least restrictive measures. They have frequently and recently been unsuccessful, both before and after his going to Iraq. He has a lengthy history of criminal conduct. This is probably not one of the more serious offenses that I see, but clearly he has had every opportunity to straighten himself out. I understand that he's got a drug problem. I understand that it's bad. He also has some mental-health problems. But at this time I'm just not going to place him on an alternative sentence. If after, you know, some in-custody programs at CCA and/or a better idea of where you might go, I might consider it in the future. But not right now. I mean, he's going to just – [Defendant] – . . . we've just tried and we've tried. And I understand how difficult it is to get off drugs. But, you know, at some point I've got to say you've got to serve your time. You get your jail credit.

The Defendant appeals both his judgments of conviction and his sentence.

## II. Analysis

On appeal, the Defendant contends that: (1) the trial court erred when it allowed the State to impeach his credibility with his prior convictions for theft and fraudulent use of a credit card; (2) there is insufficient evidence to support his convictions; and (3) the trial court erred when it enhanced his sentence.

### A. Prior Convictions

The Defendant first contends the trial court erred when it allowed the State to impeach him with his prior convictions. The Defendant asserts the trial court abused its discretion when it found that the probative value of the Defendant's prior convictions outweighed any prejudicial effect, in part because the crimes were so similar to the one for which he was on trial. The State counters that the fact a prior conviction involves the same or similar crime for which a defendant is being tried does not automatically require its expulsion.

Tennessee Rule of Evidence 609(a) provides that a witness may be impeached by evidence of a prior conviction. However, the prior conviction must be a felony conviction or a conviction of an offense involving dishonesty or a false statement. Tenn. R. Evid. 609(a)(2). Upon request, the trial court must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. *Id.* The rule also mandates that the State give reasonable written notice before trial of the particular convictions it intends to use to impeach the accused. Tenn. R. Evid. 609(a)(3). The Tennessee Supreme Court has noted that the following two criteria are especially relevant in balancing a prior conviction's probative value and unfair prejudicial effect: (1) the impeaching conviction's relevance as to credibility; and (2) the impeaching conviction's similarity to the charged offense. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003). A trial court should first analyze the relevance the impeaching conviction has to the issue of credibility. *Id.* The trial court should then assess the similarity between the crime on trial and the crime underlying the conviction. *Id.* at 373.

When an impeaching conviction is substantially similar to the charged offense, a danger exists that jurors will improperly consider the impeaching conviction as evidence of the propensity of the defendant to commit the crime. *Id.* Accordingly, the unfair prejudicial effect of an impeaching conviction on the substantive issues greatly increases if the conviction is substantially similar to the charged offense. *Id.* Under these circumstances, a trial court should carefully balance the impeaching conviction's relevance with regard to credibility against its unfair prejudicial effect on substantive issues. *Id.*

Evidence of a prior conviction that is substantially similar to the charged offense is not per se inadmissible for impeachment purposes. *Id.* "The standard is not whether there is any prejudice by allowing the State to use the prior conviction for impeachment, but whether the possible prejudice is outweighed by the probative value of the evidence as to the defendant's credibility as a witness." *State v. Roberts*, 943 S.W.2d 403, 408 (Tenn. Crim. App. 1996), *overruled on other grounds by State v. Ralph*, 6 S.W.3d 251 (Tenn. 1999). The courts of this State have repeatedly held that robbery and theft are crimes of dishonesty, "thus lending greater weight to their probative value regarding credibility." *State v. Lamario Sumner*, No. W2005-00122-CCA-R3-CD, 2006 WL 44377, at *5 (Tenn. Crim. App., at Jackson, Jan. 6, 2006) (quoting *State v. Blevins*, 968 S.W.2d 888, 893 (Tenn. Crim. App. 1997)), *perm. app. denied* (Tenn. May 30, 2006). On appellate review, the trial court's rulings on the admissibility of prior convictions for impeachment purposes are subject to reversal only for an abuse of discretion. *State v. Thompson*, 36 S.W.3d 102, 110 (Tenn. Crim. App. 2000). A trial court abuses its discretion only when it applies an incorrect legal standard or reaches a decision that stands against logic or reasoning that causes an injustice to the complaining party. *Waller*, 118 S.W.3d at 371.

In the case under submission, the State properly filed written notice before the trial of its intent to question the Defendant about his prior convictions. Before the Defendant testified, the trial court conducted a hearing outside the presence of the jury to determine whether the Defendant's convictions were admissible to impeach his credibility. The Defendant contended at the hearing that the prior convictions were not admissible because they were too similar to the crime for which he was charged, and the prejudicial effect of the admission of the convictions far

outweighed any probative value about his credibility.  The State countered that the Defendant's defense was a "claim of right" defense, meaning the Defendant contended he thought he had a right to be in possession of the van.  Therefore, the Defendant's credibility was crucially important to the jury's determination of his guilt.  The Court found:

> There's obviously prior convictions.  And then I have to determine whether or not the probative value outweighs its unfair prejudicial effect on the substantive issues.  So there's this balancing test.  And there also is a lot of case law that indicates that one has to be very careful when the crimes are similar.  Well, they are [in this case].  However, this is – you know, I think we'd be in a different situation if this were an aggravated assault case and he had been convicted of aggravated assault, because aggravated assault is definitely a crime, but it's not a crime of dishonesty, but, yet, it could be used.  There can't be any more a crime that is more reflective of a person's dishonesty than the crime of theft.  So it has such a probative value, even though this is a theft case.  At this point – and then given that I'm sure [the Defendant] obviously given his claim of right, is going to deny this, the credibility is absolutely crucial.  So I'm going to allow the State to impeach on that theft, even though they're similar, it's just such a crime of dishonesty, it just kind of goes to the whole credibility.  It's far more pr[o]bative than prejudicial.

Later the trial court said:

> Well, we had two counts of theft and I ruled that they were admissible, even though they're similar to this, because of just the absolute importance of the assessment of credibility, should [the Defendant] testify.  We'll allow that.  Fraudulent use of a credit card, though, involves a theft – it's sort of a crime of dishonesty.  It's not, at least, a theft offense.

We conclude that the trial court did not abuse its discretion when it concluded the probative value of the Defendant's prior convictions outweighed their prejudicial effect.  The trial court determined the Defendant's credibility was a key issue, especially in light of his claim of right defense.  The Defendant denied he took the van from Rent-A-Center but explained he rented the van from his friend for a couple of hours.  As previously stated, theft, like fraudulent use of a credit card, is a crime of dishonesty and therefore highly probative to the Defendant's credibility.  Because the trial court did not use an incorrect legal standard or reach a decision that stands against logic, we conclude the trial court did not abuse its discretion when it determined the Defendant's prior criminal convictions were highly probative to his credibility, and the probative value of the testimony was not outweighed by the prejudice.  The Defendant is not entitled to relief on this issue.

### B.  Sufficiency of the Evidence

The Defendant next contends the evidence presented is insufficient to sustain his conviction for theft of property.  He asserts the evidence proved he had an honest belief that he

had the right to exercise control over the property as he did.  *See* T.C.A. § 39-14-107 (2006).  The State counters that, viewing the evidence in the light most favorable to it, a rational trier of fact could have found the essential elements of theft over $1000.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).  A conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993).  In such cases, however, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone."  The jury decides the weight to be given to circumstantial evidence, and "'[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marabler v. State*, 313 S.w.2d 451, 457 (1958)).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956).  "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859.  "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973).  The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)).  This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279

(Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000). Importantly, the credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. *Bland*, 958 S.W.2d at 659.

Pursuant to Tennessee Code Annotated section 39-14-103 (2006), "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Theft of property is a Class D felony if the value of the property obtained is between $1000 and $10,000. T.C.A. § 39-14-105(3) (2006). The evidence at trial, viewed in the light most favorable to the State, proved a van, with the keys inside it, was parked at the loading docks at the Springfield location of Rent-A-Center on September 12, 2006. The van's estimated value was $6000. At 1:00 a.m. the following morning, police officers arrested the Defendant while he drove the van. The Defendant, who grew up in Springfield, said he was familiar with the Rent-A-Center location but claimed he did not steal the van but rather "rented" it from his friend. The jury rejected the Defendant's contention. We conclude there is sufficient evidence, both direct and circumstantial, to support the jury's finding.

## C. Sentencing

The Defendant finally contends the trial court erred when it sentenced him. He does not contest the trial court's application of the three enhancement factors, but, rather, he asserts it erred when it failed to mitigate his sentence based upon his mental health status. *See* T.C.A. § 40-35-113(13) (2006). The Defendant points to proof at his sentencing hearing that he suffered from PTSD, depression, and bipolar disorder and that he used drugs to self-medicate these conditions.

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). As the Sentencing Commission Comments to this section note, the burden is on the appealing party to show that the sentence is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result is preferred. T.C.A. § 40-35-103 (2006); *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court that are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994).

In conducting a de novo review of a sentence, we must consider: (1) any evidence received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of

sentencing; (4) the arguments of counsel relative to sentencing alternatives; (5) the nature and characteristics of the offense; (6) any mitigating or enhancement factors; (7) any statements made by the defendant on his or her own behalf; and (8) the defendant's potential or lack of potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210 (2006); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

In the case under submission, the Defendant committed the offense in September 2006, so the 2005 revisions to Tennessee's sentencing act were applicable to his sentence. The revised sentencing act provides:

> (c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> > (1) The minimum sentencing within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
> >
> > (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210 (2006). Specific to the review of the trial court's finding enhancement and mitigating factors, the 2005 Sentencing Amendment effectually "deleted" appellate review of how the trial court weighed the factors because it rendered the factors "advisory." *State v. Stacey Joe* Carter, No. M2005-02784-SC-R11-CD, – S.W.3d –, 2008 WL 2081247, at *9-10 (Tenn. May 19, 2008). Therefore, an error in the trial court's application of the enhancement or mitigating factors "will not necessarily require modification of the sentence if the sentence record reflects that in determining the specific sentence length, the trial court considered the provisions of Tennessee Code Annotated section[] 40-35-210(b)." *Id.*

In this case, the trial court sentenced the Defendant to the midpoint of his sentencing range, applying three enhancement factors and two mitigating factors. The Defendant does not contest the three enhancement factors applied by the trial court: (1) that he has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (2) that he has failed to comply with conditions of a sentence involving release into the community; and (3) that he was on probation at the time that he committed this offense. *See* T.C.A. § 40-35-113 (1), (8) & (13). Similarly, the Defendant agrees with the trial court's application of two mitigating factors: (1) that his conduct neither caused nor threatened serious bodily injury; and (2) that, under the "catch-all" provision to consider any other factor consistent with the purposes of the chapter, the Defendant's volunteering to deploy to Iraq. *See*

-11-

T.C.A. § 40-35-114 (1) & (13). The Defendant contends that the trial court should have also considered his recent diagnosis for PTSD, depression, and bipolar disorder under the catch-all provision.

At the sentencing hearing, the Defendant's attorney argued the trial court should consider his mental condition under mitigating factor (8), which allows the trial court to mitigate a defendant's sentence because he has a mental condition that could have reduced his capability or his capacity to commit the offense although falling short of constituting a defense. *See* T.C.A. § 40-35-114(8). In order to establish this mitigating factor, the defendant must not only establish the presence of a mental condition significantly reducing culpability but also a causal nexus between his condition and the offense charged. *See State v. Robert James Yoreck, III*, No. M2004-01289-CCA-RM-CD, 2003 WL 23613823, at *4 (Tenn. Crim. App., at Nashville, June 29, 2004). The only evidence that the Defendant suffered any mental condition was offered through his own testimony that he had recently been diagnosed with PTSD, depression, and bipolar disorder. He offered no documentation supporting these diagnoses. He also did not provide any evidence of a causal nexus between these conditions and the offense charged. Under these circumstances, we cannot conclude that the trial court erred when it failed to apply mitigating factor (8). *See State v. Treva Strickland*, No. 03C01-9611-CC-00427, 1997 WL 785675, at *5 (Tenn. Crim. App., at Knoxville, Dec. 16, 1997) (stating that mitigating factor (8) did not apply because there was no proof that defendant's alleged mental condition significantly reduced her culpability for the offenses); *State v. Kenneth Blanchard*, No. 01C01-9403-CR-00099, 1995 WL 392902, at *7 (Tenn. Crim. App., at Nashville, July 6, 1995) (stating that mitigating factor (8) did not apply because there was no proof about how the defendant's mental condition reduced his culpability in the incident for which he was convicted).

On appeal, the Defendant contends for the first time that the trial court should have considered his mental condition under the "catch-all" provision of mitigating factor (13). The trial court considered and applied mitigating factor (13) based upon the Defendant's military service. It did not, however, afford this factor greater weight based upon the Defendant's mental condition. This Court has held that an issue based on the failure of the trial court to consider certain mitigating factors is not waived for purposes of appeal if there is evidence of such factors in the record. *State v. Lyle T. Van Ulzen and Billy J. Coffelt*, No. M2004-02462-CCA-R3-CD, 2005 WL 2874654, at *3 (Tenn. Crim. App., at Nashville, Oct. 31, 2005), *no perm. app. filed*. The Court noted:

> The Sentencing Commission comments are clear that the trial court is required to take into account all of the evidence presented at the trial and the sentencing hearing. Therefore, if evidence of a mitigating factor or factors is present at the trial or the sentencing hearing, the trial court is required to consider them in the sentencing process.

*Id.* at *4. We will, therefore, address this issue on its merits.

We conclude that the trial court did not err by not affording mitigating factor (13) more weight based upon the Defendant's mental condition. There was little proof of the Defendant's

mental problems. The Defendant cursorily asserted that he had recently been diagnosed with three mental disorders and that he was told he used drugs to self-medicate. The evidence does not preponderate against the trial court's refusal to afford mitigating factor (13) greater weight based upon this testimony. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE